UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

DEMARIO T. CHATMON,
              Defendant.
_____

**INTERIM DECISION AND ORDER**

17-CR-00246-WMS-JJM

Defendant is charged with various narcotics and firearms-related offenses. Indictment [1].[1] Before the court are his motions [17, 28, 36] to suppress evidence arising from his detention following a traffic stop and from the subsequent the search of his apartment on May 15, 2017, pursuant to a search warrant issued that day ([17-1], p. 19 of 34). Oral argument was held on June 20, 2018 [31].

For the following reasons, I conclude that the traffic stop was not justified by reasonable suspicion, and that there was no probable cause for his arrest and the subsequent search of his apartment. Therefore, I will schedule a hearing to consider whether suppression of the evidence derived therefrom is warranted. *See* United States v. Leon, 468 U.S. 897 (1984), Herring v. United States, 555 U.S. 135 (2009), and United States v. Julius, 610 F.3d 60 (2d Cir. 2010).

**BACKGROUND**

At noon on May 15, 2017 defendant Chatmon, residing at 19 South Work Street, Apartment 2 in the Village of Falconer, New York, was stopped by City of Jamestown police

---

[1]     Bracketed references are to CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

officers while driving in the Village of Falconer. He was driving lawfully and had committed no traffic infractions, nor was he engaged in illegal conduct at the time he was stopped. Chatmon Affidavit [17-1], pp. 15-16 of 34 (CM/ECF pagination); police incident report [17-1], p. 26 of 34 (CM/ECF pagination).[2] He was handcuffed, placed in a Jamestown Police Department patrol car and taken to the City of Jamestown Police Department. Chatmon Affidavit [17-1], p. 16 of 34. A small bag of what appeared to be cocaine was retrieved from his shoe. Supplementary Police Report [17-1], p. 32 of 34 (CM/ECF pagination).

Early that afternoon, City of Jamestown police detectives Floyd Kent and Jeremy Maggio appeared together with a confidential informant ("CI") before Jamestown City Court/Acting Chautauqua County Court Judge John LaMancuso. [32, 33]. Detective Kent presented Judge LaMancuso with applications for two search warrants for 19 South Work Street: one for Apartment 2 ([17-1], pp. 8-10 of 34), and the other for Apartment 3 ([36-2], pp. 6-8 of 10). The application for Apartment 2 stated that "said apartment is being used by Demario Torrel Chatmon . . . for the possession and distribution of Cocaine . . . . Demario T. Chatmon has a street name alias of 'Shawn'." [17-1], p. 8 of 34. It further stated that "a confidential source contacted the Jamestown Police Department and stated [Chatmon], AKA 'Shawn' was selling narcotics out of Apt#2 . . . . On 05/\*\*/2017 the confidential source did see . . . Chatmon in possession of several ounces of cocaine". Id., p. 9 of 34.

Judge LaMancuso examined the CI under oath. He was aware of the fact that the CI was facing Class B felony and Class A misdemeanor charges. Redacted interview transcript

---

[2] Counsel for the government agrees that "[i]n the moment he was stopped he hadn't committed any traffic violations". [39], p. 15.

[32], pp. 3, 14.[3] Although the CI did not "know the apartment numbers, which one's which" ([32] p. 4), he/she stated that on the date in question, "I would have been inside Shawn's residence . . . . It was Shawn's apartment I'm talking about". Id., pp. 4, 6. While the application repeatedly states that Chatmon is also known as "Shawn" ([17-1], pp. 8-9 of 34), the CI testified that "Shawn would be Damien [Thomas]". Id., p. 5. Immediately after the CI made that statement, Judge LaMancuso suggested that they "go off the record", and a discussion off the record followed. Id. Detective Kent later testified to Judge LaMancuso that "Apartment No. 2 was identified by our source as Shawn, and we were able to determine his real name is Demario Chatmon". Id., pp. 10-11.

Although the application states that a few days earlier[4] the CI "had reported seeing Chatmon in possession of several ounces of cocaine" in Apartment 2 ([17-1], p. 9 of 34), the CI testified that on that date all he saw was a quarter ounce of crack cocaine, and no other drugs. [32], pp. 6-7. Although the application stated that there was reasonable cause to believe that "monies, records, scales and packaging materials, lock boxes and safes used in the sale and distribution of Cocaine" would be found in the apartment ([17-1], p. 8 of 34), the CI denied seeing any of those items:

> Q. "[D]id you notice any other items in the apartment while you were there?
>
> A. As far as illegal? No.
>
> Q. [D]id they have any scales that you saw? Did they have any guns? Did they have any other drugs that you saw besides what they sold to you?

---

[3] The unredacted transcript, identifying the CI, is docketed under seal [33].

[4] The specific date is mentioned in the unredacted application ([36-2], p. 3 of 10) and in the unredacted transcript ([33], p. 4).

      A. No."

[32], p. 7.

At 1:18 p.m., 13 minutes after the interview began, Judge LaMancuso stated: "I do find there's probable cause for Apartment No. 2, and I will issue a search warrant based upon the testimony of [the CI] and the confirmation of Detective Kent. I'm going to go through and initial all the changes on each page and have you initial as well". [32], p. 13. He and Detective Kent then initialed handwritten changes to the application ([17-1], pp. 8-9 of 34), and Detective Kent swore to the truth of the application "except as testified to by [the CI]". [32], p. 13. Judge LaMancuso then signed a search warrant for the following property items in Apartment 2: "Cocaine and or any other controlled substances or items . . . to include monies, records, scales, packaging materials, safes and lock boxes, used in the sale and distribution of Marihuana and narcotics". [17-1], p. 19 of 34.

The search warrant was executed that day shortly after 2:00 p.m. Id., p. 28 of 34. Detective Kent "took evidence photographs and coordinated the assigned personnel to complete the search of the residence". Id., p. 29 of 34.

## DISCUSSION

**A.    Was the Search Warrant for Apartment 2 Supported by Probable Cause?**

The government argues that "[t]he issuing magistrate's 'determination of probable cause should be paid great deference by reviewing courts'." Government's Response [29], p. 8 (*quoting* Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Deference to the magistrate, however, is not boundless . . . . reviewing courts will not defer to a warrant based on an affidavit that does

not provide the magistrate with a substantial basis for determining the existence of probable cause." Gates, 462 U.S. at 239. Therefore, "[e]ven if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances". Leon, 468 U.S. at 914-15.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238-39.

I recognize that "where reason for crediting the source of the information is given . . . courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner". United States v. Ventresca, 380 U.S. 102, 109 (1965); Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991). Here, however, Judge LaMancuso was given, and himself offered, little reason for crediting the source of the information. While the government suggests that "[t]he fact that the informant was a confessed participant in the criminal activities was, by itself, sufficient to establish the trustworthiness of his disclosures" (government's Response [29], p. 10), Judge LaMancuso knew that the CI was facing a felony charge ([32], p. 14). That should have given him at least *some* pause, since "a defendant facing felony charges has incentive to fabricate". United States v. Baldwin, 2011 WL

-5-

2671508, *7 (N.D. Ga. 2011); United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004) ("a criminal informer is less reliable than an innocent bystander with no apparent motive to falsify").

The record is replete with inconsistencies between the CI's testimony, the statements in the application, and Detective Kent's testimony. For example, whereas the CI told Judge LaMancuso under oath that he had seen only a quarter ounce of cocaine on the date in question, according to the Detective Kent's application the CI stated that he had seen several ounces on that date. The government suggests that this discrepancy was merely the result of "a typographical error", arguing that "it is clear that Detective Kent mistakenly described the amount of crack cocaine as 'ounces' rather than grams". Government's Motion to Seal and Response [37], p. 8.  However, since "it is presumed that the police officer accurately transcribed and reported the witness's story" (Latif v. Obama, 677 F.3d 1175, 1203 (D.C. Cir. 2011)), it is equally (if not more) likely that the CI *did* tell Detective Kent something different from what he told Judge LaMancuso. That inconsistency should have been explored, but it was not.

Even more significantly, although the application and Detective Kent (citing an unidentified "source") stated that defendant Chatmon was known as "Shawn", the CI testified that Damien Thomas was "Shawn". Immediately after he made that statement was made,  Judge LaMancuso held an off the record discussion with him ([32], p. 5),[5] in violation of  New York Criminal Procedure Law §§690.36(3) (requiring that after the witness is sworn, "all of the remaining communication must be recorded, either by means of a voice recording device or verbatim stenographic or verbatim longhand notes") and 690.40(1) ("[i]n determining an application for a search warrant the court may examine, under oath, any person whom it believes

---

[5]      Judge LaMancuso also held a second off the record discussion ([32], p. 10), again with no indication of what was said.

-6-

may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court").

The purpose of these requirements is "*first,* assurance of the regularity of the application process . . . and *second,* preservation for appellate review of the grounds upon which a search warrant is issued". People v. Taylor, 73 N.Y.2d 683, 689 (1989). While the "failure to comply with a state law regarding the process to be used in dealing with a warrant application does not, *by itself*, require the suppression of evidence obtained as a result of the execution of the search warrant" (United States v. Fountaine, 2008 WL 4239950, *1 n. 1 (W.D.N.Y. 2008) (emphasis added)), in this case it precludes me from analyzing the "totality of the circumstances" that were considered by Judge LaMancuso. Compounding the irregularity of the process is the fact that *after* the CI had completed his testimony, both Judge LaMancuso and Detective Kent initialed the application containing statements (as to the amount of cocaine and identity of "Shawn") which had been contradicted by the CI.

Last (but not least) of my concerns is the language of the warrant itself, authorizing a search for "Cocaine and or any other controlled substances", along with scales and other paraphernalia "used in the sale and distribution of Marihuana and narcotics", whereas the CI made no mention of seeing Marihuana, scales or other equipment in Apartment 2. If the warrant were otherwise supported by probable cause, I might consider this to be merely a problem of overbreadth, to be remedied by "suppress[ing] only the evidence seized under the overbroad portions of the warrant". United States v. Cohan, 628 F. Supp. 2d 355, 368, n. 8 (E.D.N.Y. 2009). However, in light of the other inconsistencies and irregularities already discussed, here the language of the warrant is yet another factor leading me to conclude that

Judge LaMancuso's "probable-cause determination reflected an improper analysis of the totality of the circumstances". Leon, 468 U.S. at 914-15. Therefore, I find that the warrant issued for the search of Apartment 2 was invalid.

B.    **Was Defendant Properly Stopped?**

The government attempts to justify the stop and seizure of defendant prior to issuance of the search warrant by arguing that "the investigators had all of the information ultimately supplied to the New York State judge who issued the warrant . . . . Very simply, the fact that the issuing judge ultimately found probable cause existed is informative confirmatory evidence that at least reasonable suspicion [for the stop] indeed existed". Government's Response [29], p. 14. Since I have found that there was no probable cause for the search warrant, and since the government has not otherwise identified "reasonable suspicion" for the stop (it being undisputed that defendant was not committing any traffic infractions), I conclude that the traffic stop of defendant, and his subsequent detention, was invalid.

C.    **Is Suppression Warranted?**

The government argues that even if the search warrant is invalid, suppression should be denied because "law enforcement acted in good faith in obtaining and relying" on the warrant. Government's Motion to Seal and Response [37], p. 11. "When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant. Herring, 555 U.S. at 142; Leon, 468 U.S. at 922.

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011). There are "four circumstances where an exception to the exclusionary rule would not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Id.; Leon, 468 U.S. at 923.

Therefore, a hearing is necessary to determine whether suppression is warranted.[6] See Julius, 610 F.3d at 67 ("we remand for consideration of whether the deterrent effect of applying the exclusionary rule outweighs the cost of the rule's application, for example, whether the degree of police culpability in this case rose beyond mere . . . negligence such that application of the rule is necessary to compel respect for the Fourth Amendment's guarantees"). Since the government argues that "the detectives' good faith reliance stemmed in part from their knowledge of the in camera testimony and the resulting probable cause" (government's Response [29], p. 11, n. 2), I will be particularly interested in hearing from Detective Kent. "It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." Leon, 468 U.S. at 923, n. 24.

---

[6] Since the hearing will address the Leon factors, defendant's request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) (Supplemental Motion [36], p. 8) is denied as moot.

A conference to schedule the hearing will be held on September 5, 2018 at 10:00 a.m. Although this Interim Decision and Order is temporarily filed under seal (since it quotes from sealed documents such as [32]), it does not appear to me that anything discussed herein is truly confidential. Therefore, at the September 5 conference the parties shall advise me as to which (if any) portions should remain under seal, failing which this Interim Decision and Order will be unsealed at that time. Since the motion to suppress is still pending, the Speedy Trial Act calendar remains tolled through at least that date, and the parties' deadline for objections will not begin to run until I issue a Report and Recommendation.

**SO ORDERED.**

Dated:  August 29, 2018

/s/ Jeremiah J. McCarthy<br>
JEREMIAH J. MCCARTHY<br>
United States Magistrate Judge