UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

**DECISION AND ORDER**
17-CR-246S

DEMARIO CHATMON,

                Defendant.

Defendant Demario Chatmon was stopped in his car at noon on May 15, 2017, in Jamestown, NY. While he was being held, Jamestown Police ("JPD") applied for and received a search warrant for his apartment, based on testimony from a confidential informant. After a search of Defendant's apartment found drugs, drug paraphernalia, and a gun, Defendant, still in police custody, was arrested. A search of his person at the police station after his arrest found drugs and money. Defendant moved to suppress the evidence found pursuant to the search of his apartment and the search of his person. (Docket Nos. 17, 28, 36.) This Court referred the matter to Magistrate Judge McCarthy. (Docket No. 7.) Before this court now are Defendant's (Docket No. 128) and the government's (Docket No. 127) objections to two Reports and Recommendations (Docket Nos. 95, 110) regarding multiple suppression issues.   For the following reasons, Judge McCarthy's Recommendations are adopted in part, and remanded in part for further proceedings.

## I.    Procedural History

On August 29, 2018, the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, filed an interim decision and order in which he found that (1) the vehicle stop pursuant to which police held Defendant was not justified by reasonable suspicion, and (2) that there was no probable cause for the warrant to search his apartment. (Docket No. 45.) Because he found no probable cause for the warrant, Judge McCarthy scheduled a hearing on whether evidence derived from the apartment search should be suppressed, pursuant to United States v. Leon. This hearing was held on September 24, 2018. (Docket No. 56.) At the close of the hearing, Defendant requested that the hearing be held open to allow him time to further question the government's witness, Detective Kent, the officer who had applied for the warrant, and to present his own evidence. (Id.) Judge McCarthy initially indicated that the hearing might be held open, to allow Defendant to present his arguments. But after a series of delays and possible misunderstandings among the parties, the parties were instructed to proceed by briefing, with Defendant "permitted" to make additional arguments about why additional evidence was necessary. (Docket Nos. 71, 78, 82.)

After many extensions of time, requested by Defendant's attorney, the parties held oral argument on the good faith issue on June 12, 2019. (Docket No. 90.) Defendant again asked that the good faith hearing not be closed, in the event that Judge McCarthy finds that the government had established good faith. (FTR Recording of Status Conference, 6/12/2019, Docket No. 90). The government objected and stated that it considered the hearing officially closed. A text order on June 13, 2019, instructed

Defendant to immediately raise all issues *not* related to suppression. (Docket No. 91.) On July 9, 2019, Defendant moved to request subpoenas to compel witness testimony and the production of documents related to the issuance of the warrant. (Docket No. 94).

On July 10, 2019, Judge McCarthy issued a Report and Recommendation finding that: (1) the traffic stop was not justified by reasonable suspicion; (2) the search of Defendant's apartment was supported by good faith exception, so that evidence seized pursuant to the warrant was admissible, and (3) denying Defendant's motion for subpoenas. (Docket No. 95.) The government moved for clarification, because Judge McCarthy did not directly state whether the evidence seized from Defendant's person was also admissible. (Docket No. 96.) Defendant moved for reconsideration, arguing that he had never had a chance to fully present his arguments at the good faith hearing. (Docket No. 104.) Judge McCarthy then issued a second Report and Recommendation, in which he (1) recommended that the evidence found on Defendant at the JPD station be suppressed and (2) reiterated his denial of Defendant's request for subpoenas, stating that Defendant had a chance to raise arguments for additional witnesses and had not made those arguments. (Docket No. 110.)

Both the government and Defendant, represented by new counsel, filed objections to Judge McCarthy's Reports and Recommendations. (Docket Nos. 127, 128.) Defendant responded to the government's objections on November 19, 2019. (Docket No. 131.) The government responded to Defendant's objections on November 30, 2019. (Docket No. 132.) This Court has carefully reviewed the Reports and Recommendations and the

parties' submissions. For the following reasons, this Court adopts the Recommendations in part and remands in part for further consideration.

**II.     Evidence from the station search must be suppressed because the traffic stop was not supported by reasonable suspicion, nor was the seizure of Defendant supported by probable cause.**

Addressing first the issue of the evidence found on Defendant's person at the JPD station, this Court accepts Judge McCarthy's recommendation that it be suppressed. The government argues that probable cause to arrest Defendant arose after the informant gave the tip to Detective Kent, or after the informant's sworn in camera testimony, or after the search of Defendant's apartment. (Docket No. 127 at 27.) The government argues that the search was therefore a permissible search incident to a lawful arrest. In the alternative, the government argues that the search was a lawful "inventory" search, or that the evidence from the search is admissible as an "inevitable discovery" resulting from the traffic stop. (Id. at 27-28.)

"The temporary detention of an individual during a traffic stop is subject to limitation under the Fourth Amendment as a 'seizure' of the person.... The Fourth Amendment requires that an officer making such a stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." United States v. Olavarria, No. 09 CR. 870 PGG, 2011 WL 1529190, at *4 (S.D.N.Y. Apr. 20, 2011) (citing Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir.2005)). "A stop based on reasonable suspicion must not detain a person longer than necessary to achieve the purpose of the stop." Rodriguez v. United

4

States, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015). Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. Id.

Reasonable suspicion for a traffic stop may be based upon information from a confidential informant so long as the tip bears sufficient indicia of reliability. United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007) (citing Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972)).

Unlike a brief traffic stop, where only reasonable suspicion is required, an arrest in public requires probable cause. United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008); see also Maryland v. Pringle, 540 U.S. 366, 370, 124 S. Ct. 795, 799, 157 L. Ed. 2d 769 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.")

An arrest occurs when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980)

Probable cause for an arrest can arise from an informant's tip, but only if the tip possesses sufficient indicia of reliability, considering the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 242, 103 S. Ct. 2317, 2334, 76 L. Ed. 2d 527 (1983). Reliability can be found through independent corroboration, police familiarity with the informant, the informant's track record, and his incentive in providing the tip. Id.

It is a violation of the Fourth Amendment for police to transport a person from a place where he is entitled to be, without a warrant or probable cause, to a police station, where he is detained for investigative purposes. Hayes v. Fla., 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705 (1985). (holding that fingerprint evidence resulting from involuntary transport of suspect to police station should be suppressed). See also Davis v. Mississippi, 394 U.S. 721, 89 S. Ct. 1394, 22 L.Ed.2d 676 (1969).

A warrantless search may be conducted incident to a lawful arrest but such a search may only include the arrestee's person and the area within his immediate control. Arizona v. Gant, 556 U.S. 332, 339, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (internal citations omitted). This limitation ensures that the scope of the search matches its purpose: protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. Id.

A search as part of nondiscretionary booking procedures after a lawful arrest—a so-called "inventory search"—is another exception to the warrant requirement. See South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). An inventory search does not require a warrant or probable cause because it is not done to detect crime or to serve criminal prosecutions, but rather "(1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential danger." United States v. Lopez, 547 F.3d 364, 369–70 (2d Cir. 2008) (citing Opperman, 428 U.S. at 369).

Even when evidence is seized unlawfully, it can still be admitted if the government can show that the evidence would inevitably have been discovered lawfully. Nix v.

<u>Williams</u>, 467 U.S. 431, 444 (1984); <u>see also</u> <u>U.S. v. Heath</u>, 455 F.3d 52, 55 (2d Cir. 2006). The proof of the inevitable discovery "involves no speculative elements," and must focus on demonstrated historical facts. <u>US v. Eng</u>, 971 F.2d 854, 859 (2d Cir. 1992).

Here, the confidential informant spoke with Detective Kent sometime on the morning of May 15, 2017, and told him he had seen Defendant in possession of cocaine. Defendant was stopped in his car and detained between 12 and 1 PM on May 15, 2017. A search warrant of his apartment issued at 1:18 PM and the search of his apartment was completed at 3:10 PM. (Docket No. 17-1 at 29.) After the search revealed a firearm, ammunition, controlled substances, and cash, Defendant was arrested and charged. At 3:37 PM, Defendant was searched at the Jamestown City Jail.

The government argues first that the JPD had probable cause to arrest Defendant at the time of the traffic stop, because they already had the information—from the informant's tip—upon which the warrant would be based. (Docket No. 127 at 28.)

However, this Court agrees with Judge McCarthy that the informant's tip alone did not give JPD the probable cause to stop and detain Defendant. The tip did not possess the indicia of reliability required for probable cause: the informant was not known to JPD and did not have a track record or reliability; his tip did not refer to future events that police could confirm but only referred to a one-time drug sale in the past; and the informant was a criminal defendant offering information in hope of receiving consideration. (See Docket No. 45 at 5-6.)1  This Court agrees with Judge McCarthy that the traffic stop of Defendant,

---

1 Defendant also suggests that Detective Kent's testimony about independent corroboration by checking the mailboxes in his building was false; Detective Kent testified that an independent walkthrough was done corroborating the informant's details of the building. This Court does not find it necessary to address

based on the informant's unsworn tip, was not supported by probable cause. Because there is no argument that Defendant had committed a traffic violation justifying the police in stopping him, reasonable suspicion does not justify the stop either.

The government also argues that the search of Defendant was permissible as a search incident to arrest. (Docket No. 127 at 27.) First, it does not appear that the seizure, of Defendant was warranted. This Court takes <u>Hayes v. Florida</u> to mean that police cannot transport a suspect to police station without probable cause, and then wait for probable cause to arise while Defendant is held. JPD "arrested" Defendant after the execution of the search warrant; but he was already "arrested" by being seized from his car. If the seizure that initially brought Defendant into custody was not lawful, neither was a search incident to that or any subsequent arrest.

The government next argues that the items seized from Defendant were an inevitable discovery. (Docket No. 127 at 28-29.) However, this Court agrees with Judge McCarthy that this finding requires too much speculation about what Defendant would or would not have done if left at liberty from 12:00 PM, when police stopped him, to 3:10 PM, when the search warrant was completed.

Because the initial seizure of Defendant was not justified, the search of his person while in custody is not justified as an inventory search.

In sum, the police may not seize a person from a place where he has a right to be, and bring him to a police station for investigatory purposes, without a warrant or probable cause. This Court finds no way that JPD can claim they lawfully had custody of Defendant

---

this issue to find that the search of Defendant at the police station was impermissible.

from 12 PM to 3 PM, such that searching his person at 3:37, after probable cause finally arose, was justified.

For all these reasons, this Court upholds Judge McCarthy's recommendation that the evidence taken from Defendant's person at the JPD station be suppressed.


### III. The search warrant was not based on probable cause.

In his Reports and Recommendations, Judge McCarthy found that the search warrant issued by Judge La Mancuso was not based on probable cause. The government objects and argues that there was probable cause.

For a search warrant to issue, a neutral and detached magistrate must determine that there is probable cause to believe that a crime has been committed, and that evidence of a crime will be found in the place to be searched. United States v.Travisano, 724 F.2d 341, 345 (2d Cir. 1983). This is to be a "practical, common-sense decision," based on the circumstances in the affidavit before the magistrate, and on an assessment of confidential informant testimony where applicable. See Gates, 462 U.S. at 238. When an informant's tip, standing alone, does not provide probable cause, probable cause can still be found if the information is corroborated. See Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994).

A reviewing court must give considerable deference to an issuing magistrate's determination that probable cause exists. Id. But this deference is not boundless. Leon, 468 U.S. at 419. A warrant can be found invalid when a "magistrate's probable-cause

determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect." Id. at 915.

Here, Judge McCarthy found no probable cause due to a number of problems with the warrant application and the confidential informant's in camera testimony before Judge LoMancuso. In particular, Judge McCarthy noted that the informant was facing felony charges, and therefore may have had a motive not to be truthful. (Docket No. 45 at 5). Judge McCarthy pointed out an inconsistency between the warrant application, which stated that the informant had seen defendant with "several ounces" of cocaine, and the informant's testimony to the judge that he saw Defendant give another individual ¼ ounce of cocaine, in Defendant's apartment. Judge McCarthy noted that Judge LoMancuso went off the record several times, making an assessment of his probable cause finding impossible.

Finally, Judge McCarthy noted an inconsistency between the warrant application, which requested a search for "cocaine, monies, records, scales and packaging materials, lock boxes and safes," (Docket No. 36-2 at 4) and the actual warrant, which authorized police to search for "Cocaine and any other controlled substances, … monies, records, scales, packaging materials, safes and lock boxes, used in the sale and distribution of Marihuana and narcotics." (Docket No 36-2 at 10.)

The government seeks to explain away all the issues Judge McCarthy raised. Instead of examining each argument in detail, this Court finds it sufficient to agree with Judge McCarthy that the totality of circumstances, looked at from a common-sense perspective, indicates that there was not probable cause to believe that drugs were

regularly being sold from Defendant's apartment, or that records, scales, packaging, other controlled substances, or materials used in the distribution of marijuana would be found there. (See Docket No. 36-2.) The informant testified that he had seen Defendant give ¼ ounce to Kevin Thomas once. When asked directly, the informant testified that he did not notice "any other [illegal] items," scales, guns, or "other drugs" in Defendant's apartment. (Docket No. 32 at 7.) A reasonable reading of this testimony is that there was no other evidence of crime in Defendant's apartment. Additionally, Judge McCarthy correctly noted that the off-the-record conversations made it impossible for him to fully assess the basis of Judge LoMancuso's probable cause finding. This Court therefore accepts Judge McCarthy's finding that the warrant was not based on probable cause.

**IV.   The Leon hearing should be reopened to determine the basis of reliance on the warrant.**

In his Reports & Recommendations, Judge McCarthy recommended that evidence found based on the warrant be admitted pursuant to the good faith exception under Leon. Defendant, now represented by new counsel, argues that (1) the good faith hearing was never properly completed, and he never had a chance to oppose the government's position; (2) failures of prior defense counsel, whether through distraction or rising to the level of ineffective assistance of counsel, make it only fair to allow Defendant to complete the hearing process; (3) subpoenas should be issued to compel the testimony of witnesses to the in camera proceedings, and (4) there was no good faith basis for the search under Leon because the information presented to Judge LoMancuso was either knowingly or recklessly false. The Government argues that there is no reason to reopen

the hearing, that prior counsel was perfectly competent and waived any arguments about reopening the hearing, and that Defendant has not shown why the subpoenas are necessary to his defense. (Docket No. 132.)

If police rely on a warrant in good faith, the evidence obtained can be admissible even where the warrant justifying the search was not based on probable cause. United States v. Leon, 468 U.S. 897, 920, 104 S. Ct. 3405, 3419, 82 L. Ed. 2d 677 (1984). "…[T]he preference for warrants is most appropriately effectuated by according "great deference" to a magistrate's determination." Id. However, the government must "demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." U.S. v. Clark, 638 F.3d 89, 100 (2d Cir. 2011).

Good faith will not be found when the officers' reliance on the warrant was not objectively reasonable. Leon, 468 U.S. at 922. This means evidence will not be admitted: (1) where the issuing magistrate has been misled by information in an affidavit "that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) where the issuing magistrate wholly abandoned his judicial role; (3) where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;: or (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. Id. at 923.

The exclusionary rule is designed "not to redress minor overstatements or simple negligence by the police, but to deter deliberate, reckless, or otherwise inexcusable violations." United States v. Raymonda, 780 F.3d 105, 120 (2d Cir. 2015)

Judge McCarthy held a hearing to determine if any of these exceptions applied. The burden was on the government to establish a good faith basis. The government called one witness, Detective Kent, who applied for the warrant. Defendant cross-examined Detective Kent at the hearing, but did not present his own evidence or witnesses. At the close of the hearing, Defendant asked that it be held open so he could further question Detective Kent. (Transcript, September 24, 2018 Hearing, Docket No. 69.)

As an initial matter, the status of the hearing during the fifteen months from September 24, 2018 to the present has not been satisfactorily resolved. At the January 8, 2019, status conference, Judge McCarthy directed the parties to brief the good faith issue. (FTR Recording, January 8, 2019 Status Conference, Docket No. 70.) He stated that if he found that the good faith exception applied, he would address Defendant's arguments. In closing, Judge McCarthy stated that if he found that the government did not meet its burden of showing good faith, the issue would be resolved. If, on the other hand, he found that the good faith exception did apply, he would "revisit [Defendant's] request." (FTR Recording, January 8, 2019 Status Conference.) Judge McCarthy assured the parties that he was keeping an "open mind" on the issue. (Id.) On January 28, 2019, Judge McCarthy ordered the parties to brief the good faith issue. (Docket No. 71.)

In a text order issued on May 14, 2018, granting Defendant a filing extension, Judge McCarthy stated, "Defendant's response to the government's post-hearing brief, which may include arguments as to why additional evidence is necessary, shall be filed by May 28, 2019." (Docket No. 82.) This does not appear to have been a clear ultimatum regarding the hearing's status. In Defendant's brief of May 28, he countered the

government's good faith arguments, but did not expressly request consideration of additional evidence or ask Judge McCarthy to hold the hearing open. (Docket No. 86.)

At oral argument on June 12, 2019, neither the good faith issue nor the status of the hearing was resolved. Defendant's counsel asked again that, if Judge McCarthy decided the government had made a showing of good faith, Defendant be permitted to continue the hearing. The government disagreed and stated that it considered the hearing closed. Judge McCarthy stated that he would check the record to see if he had denied the Defendant's request to reopen the hearing.

On June 9, 2019, Defendant requested subpoenas for two witnesses, who could testify as to the off-the-record proceedings. (Docket No. 94.) On June 10, 2019, Judge McCarthy issued his Report and Recommendation, recommending suppression of evidence from the search of Defendant, and finding a good faith basis for reliance on the warrant. (Docket No. 95.)

On July 29, 2019, Defendant submitted a Motion for Reconsideration, in which he again asked to reopen the hearing, and for permission to call witnesses who heard the off-the-record conversations. (Docket No. 101.) The government objected, arguing that Defendant was only reiterating arguments he had made before.

It appears reasonable for Defendant to have believed that he would have the opportunity to present his arguments after Judge McCarthy made a good faith finding, which he ultimately did on July 10, 2019. (Docket No. 95.) Now that Judge McCarthy has made a recommendation to admit evidence based on good faith exception, this Court

finds that it is in the interest of justice to allow Defendant to present his evidence and conclusively address the good faith issue.

Further, Judge McCarthy's Report and Recommendation of July 10, 2019, does not fully develop his analysis of the first exception under Leon. Defendant suggested that statements to Judge LoManuso were either deliberately false, or recklessly disregarded the truth. (Docket No. 86 at 9.)

Judge McCarthy concluded that, because Judge LoMancuso had before him "both the informant's in camera testimony and the search warrant application (which were admittedly inconsistent), there was no way Judge LoMancuso could have been misled, much less intentionally so." (Docket No 95 at 5.) Upon remand, Judge McCarthy will of course consider not only the question of whether Judge LoMancuso was actually misled, but whether JPD actions were so intentionally or recklessly false that exclusion of evidence would be a proper remedy for such police conduct.

Because it appears the hearing was never properly concluded, and the Defendant did not have a chance to challenge the Government's good faith showing, this Court recommits this issue to Judge McCarthy for further proceedings. Defendant shall be able to present evidence related to good faith issue, and to develop his challenge to Detective Kent's credibility.


**V.    Judge McCarthy should reconsider Defendant's application for subpoenas, with a showing by Defendant of expected witness testimony and the necessity of the requested documents.**

In his Report and Recommendation of July 10, 2019, Judge McCarthy held that Defendant did not meet the standard of Rule 17(b) and (c) to establish the necessity of the witnesses and documents he requested. (Docket No. 95 at 6.) Defendant argues that the requested witnesses are needed because Detective Kent was unable to tell Judge McCarthy what was said off the record. (Docket No. 128 at 10.) The government argues that the requested subpoenas should not issue, but that if they do, Defendant must first provide expected testimony to establish his need for the witnesses.

Rule 17(b) states that the court must order that a subpoena be issued if a defendant shows (1) an inability to pay witness's fees and (2) the necessity of a witness's presence for an adequate defense. To show that a witness is necessary, the defendant must demonstrate that the witness's testimony would be relevant, material, and useful to his defense. <u>United States v. James</u>, No. 02 CR 778 (SJ), 2005 WL 8161680, at *1 (E.D.N.Y. July 15, 2005) (citing <u>United States v. Hemandez-Urista</u>, 9 F.3d 82, 84 (10th Cir. 1993)). The decision to issue subpoenas pursuant to Rule 17(b) is "committed to the sound discretion of the trial court." <u>United States v. LeAmous</u>, 754 F.2d 795, 798 (1985).

A request for a subpoena may be denied when the defendant fails to "set forth the expected testimony of a witness," or when the testimony of the subpoenaed witness would be "cumulative" of the testimony of other witnesses. <u>United States v. Pursley</u>, 577 F.3d 1204, 1230 (10th Cir. 2009); <u>see also</u> <u>United States v. Ozsusamlar</u>, No. S1 05 Cr. 1077(PKL), 2007 WL 2200694, at * 11 (S.D.N.Y. July 30, 2007) (denying Rule 17(b) subpoena for witness to testify regarding motion for acquittal or new trial, noting that the witness was cross-examined at trial and additional testimony would likely be cumulative).

A party seeking documents through a subpoena duces tecum pursuant to Rule 17(c) must show that the documents are "evidentiary and relevant," that the application is made in good faith, and that the application is not intended as a general fishing expedition. U.S. v. Nixon, 418 U.S. 683, 699-700 (1974).

As an initial matter, the government requests an unsealed copy of Defendant's motion to request subpoenas, and Defendant does not oppose it. (Docket No. 132 at 7). This Court will therefore grant the government's request, as long as the name of the confidential informant is redacted.

The witness testimony Defendant requests would not be cumulative, because no one but the informant and the judge have knowledge of the off-the-record conversations that occurred. But Defendant has not presented the expected testimony of the witnesses he requests, and must do so before his request can be resolved.

Defendant also misstates the date on which he requested the subpoenas. He faults Judge McCarthy for not ruling on the requests as of the September 24, 2018 hearing, yet Defendant did not make the request until July 9, 2019. (Docket No. 94.) Part of this may be due to confusion of Defendant's new attorney as to the nature of sealed documents on the record. Confusion also arises when Defendant refers to his need for testimony by Detective Pierce, who would apparently testify that the claimed corroboration of the informant's tip did not actually happen. (Docket No. 128-1 at 2.) It is not clear from the record where and when Defendant actually requested Detective Pierce's testimony, nor is it clear that this testimony would contradict what Detective Kent stated under oath.

Because this Court finds it in the interest of justice to allow a full hearing on the good faith issue, this Court remands to Judge McCarthy for presentation of Defendant's case. This will require a reconsideration of the issue of the requested subpoenas. Defendant shall provide a description of the testimony he expects witnesses to provide, as required by Rule 17(b). Defendant shall also clarify whether he is requesting a subpoena of Detective Pierce, and where in the record he made that request.

IT HEREBY IS ORDERED, that the Reports and Recommendations (Docket Nos. 95, 110) are ACCEPTED in part and RECOMMITTED in part.

FURTHER, that the government's Objections to the Reports and Recommendations (Docket No. 127) are GRANTED in part and DENIED in part, as are Defendant's Objections (Docket No. 128).

FURTHER, that this case is recommitted to Judge McCarthy for further proceedings consistent with this order.

SO ORDERED.

Dated:   January 2, 2020
         Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge